May I please, I'd like, good morning. I'd like to reserve three minutes for rebuttal. Would you like us to put seven minutes on the clock so you know? Yes, thank you very much. Okay. Now my arrangement on that, if I put seven minutes on the clock, when that red light goes on, I want you to stop. Okay. Okay? All right. Go right ahead. May it please the Court, Lars Schaefer, appearing for Mr. Aguilar. I'd like to focus on the critical question, what I believe to be the critical question in this case, and that is whether or not this motorhome was situated in such a way as to lead the officers to believe that it was being used as a temporary residence. Just really briefly, I don't want to get deflected, but is it my understanding correct that if that's the case, that everything else is pretty much okay? That everything else is okay. That everything else that happened is hard to challenge? Everything else, yes. Okay. From my perspective, yes. All right. Okay. The question, because then they would be required to have a warrant, of course. They did not have a warrant. No, no. I'm saying the opposite way around. If it were in fact a motor or a vehicle, then would the rest of what they did be okay? Oh, no. It would not, because they didn't have probable cause to. All right. But go back to your argument. Okay. They did not have probable cause to search the vehicle. There wasn't even reasonable suspicion to search, to detain the occupants of the motor home. But I really do think that a lot of this does turn the major question of the case is whether or not this is being used as a residence, temporary or otherwise. In Carney, the Ninth Circuit made a laundry list of factors that you would look at to determine whether or not this might be used as a residence. But it wasn't an exhaustive list, I don't think. It wasn't an exclusive list. Well, Carney also didn't say that being a residence is the end of the question. Now, I hear what you're saying, and I've certainly read your brief, but the fact that it may be used as a temporary residence does not necessarily make it less of a vehicle. So you keep that in mind as well. Well, Carney says that you have to look at the circumstances and determine whether or not is this motor home in a setting that indicates it's being used as a temporary residence. But Carney does not say, even if you decide it is being used as a temporary residence, that's the end of the question. Indeed, that the motor home involved in Carney was arguably being used as a temporary residence, and that didn't end the question. Well, the setting in which the motor home in Carney was, it was located in a public parking lot. It was in the middle of downtown San Diego. Here you've got an overnight campground situation. And there's no way you could possibly square a gooch, which is a tent, with this motor home. Why should we distinguish? You can't drive a tent away. That's correct. But if you look at all the objective factors surrounding the situation of this motor home, the motor home is located, it was blocked by a vehicle. They had charcoal briquettes out, a stove, chairs. The trailers were unhooked. There were dune buggies and other vehicles that were off the trailers. So there was no way that they were going to be ---- Was there anything preventing it from somebody jumping in and driving it away? There was a truck blocking it. It wasn't on blocks? It wasn't hooked up to any utilities? If somebody wanted to get away quickly, they probably could get away pretty quickly. Near a highway? Near an interstate? In the motor home or in the truck. The truck apparently was blocking the motor home's exit. Well, whose truck was it? I believe it was my client's. So that's not exactly a barrier. If your client can move his truck, then the motor home drives away. Well, if ---- but there was nobody outside the ---- outside of the ---- But what about the fact that they knew that this truck, that this motor home had been ---- had been moving in the past couple of weeks? That is, that it had been there, then it hadn't been there, then it had been there, and then it hadn't been there. So it was not ---- I mean, it may have been temporary, but it was really temporary because they had every reason to think that it was going to leave. It did leave the last two weeks. Both of them did. Well, the fact is the Carney decision says temporary residence. Whether it's being ---- are the facts such that it's being used as a residence temporarily? I mean, it's sort of counter to common knowledge. If somebody has a recreational vehicle and is going around with it, they're living in it while it's moving. I mean, it's a ridiculous distinction to say it's a temporary residence some of the time and not others of the time. It's a temporary residence while it's moving. That's why you have the thing. Well, I don't see ---- a tent can be moved fairly easily as well. And I don't see the distinction between the two. When you go to a campground, you pay for a parking, a permit, you are basically in a vacation area, an area where you expect privacy because you're basically vacationing in your motor home. And so ---- Well, you certainly expect privacy. I mean, this is just a problem with the whole document. Of course you expect privacy. And you expect privacy. The people in Carney presumably expected privacy in their motor home, too, if they were living in what ---- and happened to be driving from one place to another and were parked in a public parking lot. They didn't ---- I mean, it was still as no more or less their temporary residence. But this is a ---- but it is because it's in a public parking lot where you presumably can't stay overnight. This is an overnight situation where you go to vacation and stay the weekend. In fact, the ---- I'm just pointing out that that really doesn't have anything to do with whether you expect privacy there. Okay. Well, I guess the distinction between ---- It has more to do with whether it's likely to move. Okay. The distinction between Carney and this case is that they had purchased an overnight pass to stay overnight. And if you go to a park and you camp, then you're using that as a temporary residence. And that's the distinction between Carney and the other case. Now, even assuming that this is a vehicle, there was an insufficient probable cause to justify the search of this ---- of the motor homes. Well, if it was a vehicle, then was the so-called sweep okay? No. The sweep is not okay. Because? Because there's no probable cost and there was no legitimate ---- I thought you don't need probable cause to do a sweep of a motor vehicle and you need reasonable suspicion. There's no reasonable suspicion either. First of all, am I right about that? I believe that you need, in this circuit, you need probable cause, but unless you're going to detain him, it's pursuant to a Terry stop. But it was. It's a Terry stop. But it was. They did detain him. Excuse me? They did detain him. They did detain him, but the question is whether that detention was lawful, whether there was even reasonable suspicion to support that detention. So we're down to reason. All I'm trying to do is get the standards. So if there was reasonable suspicion, then it was okay to detain him and okay to do the sweep. I believe that the sweep has to be justified by probable cause. That's what I argued in the brief. I didn't get the cases, but I believe that if there's ---- if the detention's all right, it's a vehicle, then yes, reasonable suspicion. Okay. All right. So the question is whether or not there's reasonable suspicion. All they had was information that bundles were being loaded into this motorhome, bundles being any kind of bundles. They had a citizen who said that he also saw these ---- he saw ---- he did ---- they weren't acting like typical dooners, whatever that means. Apparently, they were not taking long trips in their dune buggies. They were staying close to their camp. But those two factors, the substance of that temp is insufficient to give the rangers reasonable suspicion to stop the ---- to detain these individuals. What color is your light? Thank you. Thank you. We've got some time for rebuttal. You may want to pick up on that theme when you come back up. Thanks for your argument. We'll hear from the government at this time. Good morning. May it please the Court. Mark Rahy for the United States. To start on the first question that the defense addressed, this case is covered by the vehicle exception. And the distinctions that the defense would try to make with other cases, Gooch, based on that, do not fly. And one thing I want to point out right off the bat, the expectation of privacy isn't determinative by whether or not this motorhome was in a campground. The first factor listed in footnote 3 of Carney is location. It's just listed as one of, as defense counsel pointed out, a non-exclusive list of factors. But it's not ---- Are you prepared to concede that this motorhome was located in an area for residential ---- at least temporary residential purposes? I am, Your Honor, because this is Imperial Sand Dunes Camping Area. They get a permit. But my point is that's not determinative. First off, this Court has another case, United States v. Albers. That was the houseboat case. That houseboat was on Lake Powell, which is in the Glen Canyon National Recreation Area. Well, it was actually moving at the time, was it not? It was, but in a finite area. And this location is a location by definition for not moving, for staying. Again, but I don't know that that's determinative. She's trying to tell you that just because something's in a campground and because I pay a fee and because I'm going to stay overnight, somehow that makes a difference. What if it were hooked up for utilities, et cetera? Would it make a difference? It could, but that's the kind of discretion we leave to the district court. This Court decided a case called United States v. Hamilton. That was a motorhome that was parked in the driveway of a private residence. That motorhome was actually hooked up by an electrical ---- Why would it leave that to the discretion of a district court? I mean, there has to be some line here, and it has to be a legal line, it seems to me. I don't see why it's a discretionary line. Well, the only reason I say it's discretionary line is because the Supreme Court points this to a multi-factor balancing test. Right. Okay. And normally in other cases where that's ---- I mean, you could tell me there might be a case where three factors go the government's way. There might be cases where two or four. I think in a situation like that, it's hard for me to argue. Don't you think the police ought to know what they're ---- have some lines so they know what ---- I mean, it makes an enormous difference as to what the police actually have to do. Well, absolutely. And, I mean, I'm willing to assume that the police here did what they did because they thought it was a vehicle. Exactly. If it wasn't a vehicle, what they did made no sense at all and was totally illegal, right? I would agree. Okay. So they obviously thought it was on one side of the line. It seems they're entitled to some guidance as to what's the ---- where that line is. As a representative of the United States, I would love that, Your Honor. If you want to read that from Carney, then I think that's fantastic. I'm just trying in abundance of caution in addressing these factors to say even if there wasn't a byline rule, there's no question. Well, why ---- I mean, the problem is that this doctrine gets totally irrational. What is the difference between this and a tent? I mean, is it going to take any longer for somebody to wrap up a tent and throw it in the back of their car as a realistic matter than to move this truck and put their barbecues and chairs and stuff that's strewn around the campsite into their camp? And isn't the purpose of it exactly the same? And aren't they going to get out of there in approximately the same amount of time? What difference does it make? Perhaps, Your Honor, but I wouldn't be the first lawyer to come up here and try to say the Fourth Amendment doesn't always make sense in this case. But if you look at the ---- there is a long, solid line of authority that movable containers, like briefcases, get more protection than a vehicle. And Gooch actually goes into one of these reasons. There are two rationales for the vehicle exception. One is ready mobility, which would apply to the things that you just discussed. The other rationale is the pervasive government regulation. Now, that's not the case with the tent. And, in fact, Gooch ---- I think the government, our position in a nutshell is to say that this is like a tent is comparing apples and oranges. A tent is not a vehicle. In fact, this Court in Gooch rejected that suggestion and said that it is like a movable container instead, albeit a very large one. What if this thing were ---- I mean, you go to campsites. I haven't been to one for a while, but I used to go. There are some of these self-contained motorhomes. Then there are ones that are trailers pulled on cars. If this were a trailer pulled in a car, so it was at the time it was sitting there and not connected to any vehicle, then it seems to me you'd have to say it's like a tent, no? That might be a closer case, Your Honor. But I think in this case here ---- So their problem was they should have gotten a trailer instead of a motorhome. That could be. That could be. But, you know, the United States Supreme Court said in Carney mobile homes are particularly susceptible to abuse in the illicit narcotics trade. This case provides a classic example. The pictures, we included those in our excerpts of record. This is like the Wild West out in Imperial County. It's desert. I don't know that there's even a magistrate very far away. These officers in this case, they're going on the information they have. When they see a motorhome of these dimensions, and again, the pictures are multiple pictures in the record, they know that it's readily mobile. And as Your Honor pointed out, on the facts of this case, the last two weekends, they know it's there on the weekend, it's gone in the week. It's there on the weekend, it's gone during the week. Now, which brings me to another point. I believe there were some questions asked. Defense would have this Court believe, oh, you have to look at all these facts. Was there a truck blocking it? You know, who owned the equipment? How quickly could they get away? The Supreme Court has rejected that. And we cited two cases. They're both precarious opinions. One's Maryland v. Dyson. The other is Pennsylvania v. Lebron. The Supreme Court has made clear that when you apply the vehicle exception, it's a vehicle, and there's probable cause. End of story. What's a vehicle standing by the road? I wonder about this. What's a vehicle that has a flat tire standing by the side of the road, can't go anywhere? I think that that would still work, Your Honor, because, in fact, there's a case I found, United States v. Hadley. That case involved a car that, in fact, was inoperable. This Court said that there's a standard, as long as police officers reasonably believe that it was operable, that fulfills the exception. But that's different. But I was positing something that was obviously inoperable. Yeah. And I think, you know, I remember when I looked at the Lafayette, the treatise, when I wrote this brief six months ago. There are cases, even cars that are in a shop overnight, still can be readily mobile. But this is not a car. This is a place that's used for people to live, right? At times, yes. And what's unusual about a motorhome being in a place like this on weekends, but not during the week? I don't know. Isn't that normally when people recreate on the weekend? Absolutely. But that proves ready mobility. Did the officers in this case know that the motorhome or homes were not hooked up? Yes, they did. Because, one, they could see it. Two, they testified that there are no sewage hookups. And, in fact, that's why you see a lot of reference to the bathroom number three playing significance in this case. These officers, one of the reasons they felt there was something really suspicious going on is when they ordered the people to come out and the people took their time, one of them said, oh, there's somebody in the bathroom. And the record has this level of detail. There are three or four. That didn't make any sense to me. Because somebody could be in the bathroom not using the bathroom. It could have been a perfectly true statement. Well, then I'll put you on to the United States v. RV suit, which says, just because there could be a possibly reasonable explanation for something doesn't take it out of the reasonable suspicion calculus. And that's another theme that runs through the defense brief. Were there utility hookups at this campsite? I don't believe so. Because they're saying – and they said it wasn't hooked up. And if you look at the pictures, you can see – You don't have to waste your time. There were no utility hookups. Right. Were there hookups of any kind? Of any kind, that I don't know. But there's sand and there's these outhouses, and there's no connection between the outhouses and the – So you could have had three – you could have had two mobile homes sitting side by side. One that people have been living in for weeks. But from the exterior view, you couldn't tell the difference between the two, right? I would say that's true. And this is a campground that requires a permit. Correct. And does it permit long-term stays? I believe the permits are a good seven days from the use. There was testimony in the record for that. So a week is the longest you can stay? Correct. Well, we don't know that you couldn't renew it for another week. No, but that's going to be my next point. So the fact that the motor vehicle appeared to be readily mobile would not distinguish it from any other motor home that might have been in the park? That's correct, Your Honor. Okay. Which is why that is one of the five factors put in footnote 3 of Carney. And in this case, the Court addressed every single one of them. All right. Now, if we thought this was not a vehicle, then what? It seems to me that you – your argument at that point is that the so-called protective sweep was nonetheless valid, but I don't see how that could be. You asked the question what's the standard. The standard is not probable cause. You're not going to find that. If it was a vehicle, but what if it wasn't a vehicle? If it wasn't a vehicle, I mean, I cited Michigan v. Long. I realize that's a vehicle case. I didn't look too hard at the house cases, but I think there's some room for that. And, in fact, I cited a case in my view. Well, I think it would have to be incident to a valid arrest inside the house, and you didn't say there was an arrest at that point. It wasn't an arrest at that point, and it wasn't in the house, so I don't see how you could go in at that. If it were a house and you had some people outside the house on a Terry stop, I don't see how you could go into the house on a protective sweep. Well, I won't commit to any absolute view of the fact, Your Honor, but I cited a case, United States v. Papal. It says a gun aimed at an officer from inside a window four feet away is just as dangerous as one that's outside. So I think on the right facts and the right facts. What does that have to do with this case? Because Judge Berzal just asked me, could you ever have a protective sweep of the house, Your Honor, without probable cause? And I'm hypothesizing facts. Well, that would be an exigency, it seems to me. But there was no gun aimed at an officer anywhere, so that's not terribly relevant. Well, true. But you're asking me for an absolute position, Your Honor. All I'm saying is on the right facts, we might have to reach that conclusion. But on this facts, you have no justification if it wasn't a vehicle. I'm not going to concede that, Your Honor. I don't know the answer to that. But all I can say is the reason. $20 is your light. Stop. Thanks for coming into this rebuttal. Thank you, Your Honor. Ms. Rebuttal. I'd just like to go back to the idea of this temporary residence. Carney says that if you look at where this motorhome is located, and is it – can you say it is a residence, temporary or otherwise? And if you say in this circumstance that this is not a temporary residence, then I'm not sure what would be a temporary residence. That's what Carney doesn't say. If it is a temporary residence, that's the end of the game. Carney says in footnote 3, we don't have to consider that question. But among the relevant questions would be, is it on blocks? This isn't on blocks. I mean, the district court went through all the things that Carney lists. So even if, by the Supreme Court's terminology, it's a temporary residence, I don't think that gets you anyplace unless you can deal with those factors. Well, those factors, I would suggest, are just illustrative rather than definitive. Well, then what is there illustrative in your favor? Because you go down this list in Carney and all of them seem to wave against your client. Well, first of all, they had to – they obtained a permit, an overnight permit. No, no. See, you're answering the residence question. But footnote 3 says, we don't have to answer that in this case. But among the factors that might be relevant in determining whether a warrant would be acquired in such a circumstance is its location. Whether the vehicle is readily mobile or instead, for instance, elevated on blocks, so on and so forth. To continue to tell me that it's a temporary residence, given that the government has conceded that, doesn't get you anyplace. Accepting it's a temporary residence, it's still a vehicle. Why isn't it subject to the vehicle exception? It's not subject to the vehicle exception because there was other factors, other Is it any less mobile? Well, it was blocked by a truck and the trailers were not attached. The dune buggies were not attached. I mean, they were all out. There was things spread out all over the place. And so it wasn't as if it's a houseboat that's moving. I mean, they would have to pack up all their stuff, basically, and leave. They were out. I guess there were no hookups, so it couldn't be hooked up. And you look at all of the factors to determine, is this being used as a living space? The government's conceded that. And the government doesn't think that causes it to lose. And to be honest, I don't either. So you're going to need more than a living space. Well, they had to pack up all the things in order to be able to leave. And how long would it take them to get away if they really wanted to get away? Well, somebody would have to come out and move the truck. And the officers were there and could have secured the premises. But apparently everything else on that land were vehicles, whether you had to move the truck or not. I mean, the dune buggies and the ATVs and the truck and so on, right, even if they were blocked by a truck. Except for the trailer. I know. I mean, that's what I'm saying. The trailers were hooked up to the motorhome. And there was a lot of other things out there. How do we know that? The trailer was not unhooked from the motorhome. But how do we know the trailer was hooked to the motorhome? The trailer was not hooked up to the motorhome. I know. But how do we know the trailer was ever hooked up to the motorhome? Because it was out there with the motorhome. We'd assume that's how they transported all their stuff. Not the truck. Pardon? Not by the truck. The trailer wasn't hooked up. It wasn't by the truck. It was unhooked from the truck, as I recall. It wasn't hooked to anything. But we don't know what it would have been hooked to if it were to be hooked. It could be. I'm not positive. I don't think that's in the record. Okay. Thank you for your argument. Thanks for coming in today. The case would make a great law review question. And it's submitted for decision. We'll proceed to the next case on the argument calendar, which is McKnight v. Torres.
judges: Hawkins, Berzon, Clifton